IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

TERESA MARIE PROHASKA                  Case No. 3:13-CV-01621-MA

              Plaintiff,                  OPINION AND ORDER

    v.

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL
SECURITY

            Defendant.

TIM WILBORN
Wilborn Law Office, PC
P.O. Box 370578
Las Vegas, NV 89137

    Attorney for Plaintiff

S. AMANDA MARSHALL
United States Attorney
District of Oregon
RONALD K. SILVER
Assistant United States Attorney
1000 S.W. Third Ave., Suite 600
Portland, OR 97204

BRETT E. ECKELBERG
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 221A
Seattle, WA 98104-7075

    Attorneys for Defendant

1 - OPINION AND ORDER

Marsh, Judge

Plaintiff Teresa Prohaska seeks judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C §§ 401-403, and application for Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons that follow, this court reverses the decision of the Commissioner and remands this matter pursuant to sentence four of 42 U.S.C. §405(g) for further administrative proceedings.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for DIB and SSI on November 10, 2009, alleging disability beginning January 1, 2003, due to multiple sclerosis and peripheral neuropathy. Plaintiff's claims were denied initially and upon reconsideration. Plaintiff filed a request for a hearing before an administrative law judge (ALJ). An ALJ held a hearing on February 13, 2012, at which plaintiff appeared with her attorney and testified. Also appearing and testifying were medical expert William Rack, M.D., plaintiff's mother Trudy Cherry, and vocational expert Hanoch Livneh. After the hearing, plaintiff amended her alleged onset date of disability to June 1, 2008. Tr. 125. On May 3, 2012, the ALJ issued an

unfavorable decision. The Appeals Council denied plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

Born in 1961, plaintiff was 50 years old on the date of the ALJ's adverse decision. Plaintiff completed high school, three years of college, and obtained a license as a massage therapist. Plaintiff's past relevant work includes: flagger, convenience store cashier, massage therapist, and house cleaner.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since her alleged onset of disability. At step two, the ALJ found that plaintiff had the following severe impairments: multiple sclerosis and peripheral neuropathy. At step three, the ALJ found that plaintiff's impairments, or combination

of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 404.1567(b) except she needs to change positions hourly between sitting and standing, and is limited to occasionally climbing, stooping, kneeling, and crawling, and frequently handling and fingering. Plaintiff cannot crouch, balance, or work at unprotected heights or around moving machinery.

At step four, the ALJ found plaintiff is able to perform past relevant work as a cashier, and thus did not reach step five. Accordingly, the ALJ concluded that plaintiff has not been under a disability under the Social Security Act from June 1, 2008, through the date of the decision.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the ALJ failed to properly evaluate her credibility; (2) the ALJ failed to properly evaluate the lay testimony of her mother Trudy Cherry; (3) the ALJ's step four findings are not supported by substantial evidence; and (4) because of these errors, the hypothetical posed to the vocational expert was invalid.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied the proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

I.  **ALJ Did not Err in Evaluating Plaintiff's Credibility**

A.  **Standards**

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. §§ 404.12629, 416.929. The first

stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms. *Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Tommasetti*, 533 F.3d at 1039. Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039.

**B.   Analysis**

At the hearing, plaintiff testified that she closed her massage therapy business in 2007 because she was unable to stand

6 - OPINION AND ORDER

for long periods of the day and using her hands all day caused
pain. Tr. 30. She testified that she cannot stand for more than a
few hours at a time before feeling pain in her feet. Tr. 38.
Plaintiff stated that she has trouble lifting five pound weights,
climbing stairs and ladders, and difficulty keeping her balance
while walking. Tr. 42. She also testified that she cannot bend over
at the waist because it causes her to lose her balance. Tr. 44.

In a Function Report, dated December 18, 2009, plaintiff
indicated that she can walk 100 feet before requiring a five to 10
minute rest. Tr. 170. Plaintiff also noted that before becoming
ill, she was able to cut down trees, cut firewood with a chainsaw,
ski, lift weights, and run. Tr. 166. In describing a regular day,
plaintiff stated that she watches television in the morning,
prepares lunch, does dishes and laundry, vacuums if needed, and
goes to the store, if needed. Tr. 165. Plaintiff indicated that the
pain and burning in her hands and feet wake her from sleep. Tr.
166. Plaintiff stated that she takes care of her cat and gives it
pet massages. *Id.* Plaintiff noted that she performs some raking and
weeding outside once a week as well as using a riding lawnmower to
cut the grass once a month. Tr. 167.

In a Pain and Fatigue Questionaire, plaintiff noted a constant
burning, swelling sensation and pain in her hands and feet. Tr.
181. Plaintiff stated that she cannot garden or play catch for
lengthy periods. *Id.* In responding to how fatigue affects her daily

7 - OPINION AND ORDER

activities, plaintiff indicated that she attempts to perform normal activities to avoid doing nothing. Tr. 181.

In the decision, the ALJ concluded that plaintiff has medically determinable impairments that cause symptoms resulting in some limitations on work activity, but her subjective complaints and alleged limitations are not fully credible. Tr. 18.

Contrary to plaintiff's assertion, the ALJ provided three clear and convincing reasons, citing specific record evidence, which undermine her subjective complaints. As discussed below, the ALJ also provided one unconvincing reason for discrediting plaintiff's allegations of pain. However, the other three reasons adequately support the ALJ's credibility determination.

### 1. inconsistent with objective medical evidence

Contrary to plaintiff's suggestion, the ALJ specifically found plaintiff's objective medical record is inconsistent with her subjective allegations of debilitating symptoms. Tr. 18. When the claimant's own medical record undercuts her assertions, the ALJ may rely on that contradiction to discredit the claimant. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007); *Morgan v. Commissioner Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *Carmickle*, 533 F.3d at 1161. The ALJ's findings are supported by substantial evidence in the record.

As the ALJ correctly discussed, the majority of medical evidence from the relevant period of alleged disability notes

relatively normal objective neurological examination findings. Tr. 16, 564-590. For example, on April 7, 2010, examining physician, James Harris, M.D., observed a normal gait, slight difficulty with tandem gait, normal sensation, four out of five strength testing of the left foot and hamstring, and ability to perform a full squat and recovery. Tr. 444. Dr. Harris opined that plaintiff could stand and walk for up to two to three hours intermittently in an eight-hour period, and lift and carry a maximum of 25 pounds. Tr. 18, 444. The ALJ accorded Dr. Harris's opinion substantial weight. Tr. 18. While the majority of the medical evidence in the record is prior to plaintiff's alleged onset date of disability, even these medical records contradict her allegations. For example, a July 2003 examination revealed a steady gait, intact motor skills and coordination, and a negative Romberg sign. Tr. 311.

Additionally, the ALJ thoroughly discussed treatment notes from plaintiff's treating neurologist, Daniel Friedman, M.D. Tr. 16. In January 2011, Dr. Friedman noted a normal motor exam, intact sensation and coordination, and normal station and gait. Tr. 16, 564-565. More importantly, Dr. Friedman concluded that plaintiff reported no symptoms to suggest recent multiple sclerosis exacerbation. Tr. 565. The ALJ accurately noted that as of February 2011, plaintiff was not taking any medication, including pain medication. Tr. 16, 564. The record reflects that plaintiff did not request pain medication from Dr. Friedman until May of 2011, as the

9 - OPINION AND ORDER

ALJ indicated. Tr. 16, 572. The ALJ could reasonably conclude that plaintiff's complaints of disabling pain are not supported by the objective medical evidence. The ALJ also discussed MRI scans from January 2011 and January 2012, noting specifically that the radiologist concluded that although both scans show extensive, chronic white matter demylination consistent with a history of multiple sclerosis, there was no interval change or progression from 2011 to 2012. Tr. 16, 585.

Moreover, the ALJ discussed two medical opinions regarding plaintiff's functional limitations, both of which are inconsistent with the severity of plaintiff's allegations. Tellingly, plaintiff does not challenge the ALJ's evaluation of these medical opinions. A medical expert, William Rack, M.D., who testified at the hearing, opined that the plaintiff could perform more than sedentary work on an occasional basis and would benefit from not using her hands on a repetitious basis. Tr. 35-36. The ALJ gave Dr. Rack's opinion great weight.

In an opinion dated April 27, 2010, non-examining physician, Richard Alley, M.D. opined that plaintiff could stand/walk for at least two hours out of an eight-hour workday, sit for six hours out of an eight-hour workday, lift and carry 10 pounds frequently and 20 pounds occasionally, frequently handle and finger, frequently stoop, kneel, crouch, and crawl, and occasionally climb ramps and stairs and balance. Tr. 18, 450-457. Dr. Alley also opined that

plaintiff requires changing positions on an hourly basis and should avoid concentrated exposure to extreme cold. The ALJ gave Dr. Alley's medical opinion some weight because the environmental restriction did not appear to be supported by the objective medical record. Tr. 18.

In short, the ALJ reasonably concluded that the objective medical evidence in the record is inconsistent with the degree of plaintiff's subjective symptoms and appropriately discounted her credibility on this basis.

### 2. sporadic work history

The ALJ cited to plaintiff's poor work history to suggest plaintiff lacks a propensity to work. Tr. 17. Evidence of a poor work history which suggests a claimant is not motivated to work is a proper reason to discredit a claimant's testimony that she is unable to work. *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). As the ALJ correctly noted, plaintiff had little to no earnings from 1989 to 1998. Tr. 17, 124. Plaintiff argues this is an improper reason to discount her testimony as plaintiff was *likely a stay at home mom* during that period of few earnings. Pl. Br. (#13) p. 14-15. Plaintiff's theory is wholly unsubstantiated. After careful review of the record, I find no testimony from plaintiff or evidence in the overall record indicating that she ceased working to stay at home with her children.

The ALJ also considered plaintiff's earnings after her alleged onset of disability in evaluating her credibility. The ALJ noted that the plaintiff earned $15,030 in 2008, and $1,650 in 2009. Tr. 17. And, as the ALJ indicated, plaintiff's hearing testimony undercuts her allegations. At the hearing, plaintiff testified that she stopped working at Plaid Pantry in 2010 because they were not giving her enough hours. Tr. 40. On the record before me, the ALJ appropriately discounted plaintiff's credibility on the basis of her ability to continue working, albeit in a decreased manner, beyond the date she alleges disability. *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989) (upholding ALJ's discrediting of plaintiff's credibility on the basis of a failed work attempt). In this case, the ALJ's finding is supported by substantial evidence.

### 3. activities of daily living

The ALJ found that plaintiff's variety of activities of daily living are inconsistent with the level of disability she alleges. For example, the ALJ discussed that plaintiff is capable of performing household chores such as laundry, vacuuming, and washing dishes, caring for a pet, watching television for two to four hours a day, and is usually able to finish tasks. Tr. 17. The ALJ noted that plaintiff grocery shops on a weekly basis for one to two hours. Tr. 169. ALJ also noted that plaintiff weeds and rakes her garden once a week and cuts her lawn with a riding mower on a monthly basis. Tr. 17. In the Pain & Fatigue Questionaire,

plaintiff did not provide an answer for the question asking about daily rests or naps during the day. Tr. 181. The ALJ's findings are wholly supported by substantial evidence in the record.

Plaintiff argues that the ALJ erroneously expected plaintiff's daily activities to show a completely debilitating medical impairment, and that plaintiff is unable to perform work on a sustained basis. I disagree.

While a claimant need not be completely incapacitated to be eligible for disability, here the record shows that plaintiff's activities are fairly extensive, and the ALJ cited specific inconsistencies. Plaintiff reports significant pain in her hands and feet that worsens with use. Tr. 181. Yet, the ALJ noted, plaintiff gives her cat lots of pet massages and commutes by driving a standard transmission automobile; both are activities that require a significant amount of handling and fingering. Tr. 45, 166.

The ALJ also found plaintiff's hearing testimony that she has difficulty concentrating to complete a task inconsistent with her Function Report, in which she indicated that she is usually able to finish tasks such as chores, reading, and watching a movie. Tr. 42, 170. Furthermore, daily activities demonstrating the ability to concentrate and finish tasks indicates a "capacity that [is] transferable to a work setting." *Molina*, 674 F.3d at 1113.

13 - OPINION AND ORDER

With respect to plaintiff's allegations of pain in her feet after standing for several hours, the ALJ fully considered this limitation. Tr. 14, 17. The RFC finding incorporates a requirement of changing positions from sitting to standing and vice versa on a hourly basis.

Based on this significant evidence in the record, I conclude that the ALJ properly discredited plaintiff's testimony because her level of activity is inconsistent with the degree of impairment that she alleges. *See Berry*, 622 F.3d at 1235 (inconsistencies between self-reported symptoms and activities supported adverse credibility finding). Accordingly, I conclude that this basis combined with the ALJ's other reasons amount to clear and convincing support backed by substantial evidence, for rejecting plaintiff's subjective symptom statements.

### 4. conservative treatment

The ALJ also discounted plaintiff's allegations of disabling pain in light of the minimal, conservative treatment evidenced in the record. A conservative course of treatment is a permissible negative inference sufficient to discount a claimant's testimony regarding the severity of an impairment. *Tommasetti,* 533 F.3d at 1039; *Parra*, 481 F.3d at 750-51. However, I disagree with the ALJ on this particular reason.

The ALJ stated that the record reveals only conservative and routine treatment despite plaintiff's numerous complaints. Tr. 17.

14 - OPINION AND ORDER

This is a mischaracterization of the record. As plaintiff correctly indicates, the medical record contains many references to her doctors prescribing a variety of neuropathic pain-relieving medications.[1] *See generally* Tr. 285, 564, 569, 573. In June 2011, plaintiff also began taking Provigil to treat her fatigue. Tr. 575. *Compare Lapeirre Gutt v. Astrue*, 382 F.App'x 662, 664 (9th Cir. 2010) (holding that copious amounts of narcotic pain medication as well as occipital nerve blocks and trigger point injections did not constitute conservative treatment) *with Khounesavtdy v. Astrue*, 549 F.Supp.2d 1218, 1225 (E.D. Cal. 2008) (holding that use of ibuprofen to treat pain constitutes conservative treatment).

Due to intolerable side effects, Dr. Friedman changed her pain medications frequently. For example, in May of 2011, Dr. Friedman prescribed Cymbalta to relieve plaintiff's neuropathic pain. Tr. 573. In September 2011, plaintiff had to discontinue Cymbalta due to gastrointestinal side effects, and Dr. Friedman prescribed Gabapentin, another pain medication. Tr. 578. In January 2012, Dr. Friedman prescribed Amantadine in place of Provigil because plaintiff reported Provigil was not effective in treating her fatigue. Tr. 582. Given the numerous prescription medications and changes in these medications, the record shows plaintiff received

---

[1]The record shows that plaintiff received narcotic pain medication such as oxycodone and methadone to treat her pain from 2002 to 2007. However, this period is prior to her alleged onset of disability in June 2008. Tr. 388, 440, 374.

more than conservative medical treatment for her reports of pain. Accordingly, this reason is invalid.

In conclusion, although the ALJ's credibility reasoning does contain one error, this error does not invalidate the ALJ's overall adverse credibility finding. The ALJ's remaining reasons, when taken together, constitute clear and convincing reasons, supported by substantial evidence to discount plaintiff's testimony. Therefore, I conclude that the ALJ's error is harmless. "So long as there remains 'substantial evidence supporting the ALJ's conclusions on...credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such [error] is deemed harmless and does not warrant reversal." *Carmickle*, 533 F.3d at 1162 (quoting *Batson*, 359 F.3d at 1195-97); *Stout v. Commissioner Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006).

## II. **The ALJ Did Not Err in Assessing the Lay Testimony**

Lay witness testimony as to how a claimant's symptoms affect her ability to work is competent evidence, which the ALJ must take into account. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009); *Stout*, 454 F.3d at 1053; *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ is required to account for competent lay witness testimony, and if it is rejected, provide germane reasons for doing so. *Valentine*, 574 F.3d at 694.

Plaintiff's mother, Trudy Cherry, completed an Adult Function Report on December 27, 2009. In this report, Mrs. Cherry indicated that plaintiff has pain in her feet. Tr. 173. Mrs. Cherry also noted that plaintiff takes care of her cat, has no problems with personal care, walks very slowly and has difficulty getting around. Tr. 174-177. Furthermore, Mrs. Cherry indicated that plaintiff is no longer able to ski, stand for long periods of time, exercise, or engage in body building. Tr. 174. Mrs. Cherry also noted that plaintiff grocery shops once a week for one hour. Tr. 176.

Mrs. Cherry also testified at the hearing that she sees plaintiff once a week and speaks with her on a daily basis. Mrs. Cherry noted that plaintiff constantly reports that her hands and feet hurt and tingle. Tr. 46. Mrs. Cherry stated that she has observed plaintiff's unstable balance while she was carrying wood. Tr. 47. Mrs. Cherry indicated that plaintiff can perform many household chores as long as she can take her time. Tr. 48. Additionally, Mrs. Cherry noted that plaintiff can only shop for 10 to 15 minutes before needing to rest. Tr. 47.

In the instant action, plaintiff argues that the ALJ failed to provide sufficient reasons for discounting Mrs. Cherry's statements concerning plaintiff's fatigue and difficulty maintaining her balance. I disagree.

In the decision, the ALJ gave Mrs. Cherry's statements about plaintiff's physical limitations and symptoms "some weight." Tr.

17 - OPINION AND ORDER

19. The ALJ gave partial credit to Mrs. Cherry's testimony with respect to plaintiff's reports of numbness and tingling in her hands and feet and difficulty balancing. Tr. 19. The ALJ also gave weight to Mrs. Cherry's statements that plaintiff's medical condition has reduced her ability to perform certain physical activities, such as skiing and bodybuilding. Tr. 19. However, the ALJ provides two specific reasons for partially discrediting Mrs. Cherry's statements regarding the severity of plaintiff's symptoms.

First, the ALJ cited to the fact that Mrs. Cherry's statements regarding plaintiff's limited ability to stand and be active is inconsistent with plaintiff's own allegations. Tr. 19. For example, at the hearing, Mrs. Cherry testified that plaintiff can shop for 10 to 15 minutes before needing to rest. Tr. 47. In contrast, plaintiff testified that she is able to shop for one to two hours at time. Tr. 168. I conclude that the ALJ's first reason is germane to Mrs. Cherry's testimony. *Valentine*, 574 F.3d at 694.

Second, the ALJ partially discredited Mrs. Cherry's statements regarding plaintiff's fatigue and ability to balance and walk because her statements are inconsistent with the medical evidence in the record. The ALJ specifically noted that although Mrs. Cherry stated that plaintiff wakes several times during the night, plaintiff reported to Dr. Friedman that she is sleeping well at night. Tr. 19, 582. Plaintiff argues that the ALJ took plaintiff's statement in the medical record out of context. The full treatment

18 - OPINION AND ORDER

note from January 2012 indicates that plaintiff made an appointment
for fatigue and reported feeling fatigued even though she was
sleeping well. Tr. 582. While this particular citation is out of
context, Dr. Friedman's other notes indicate that plaintiff
reported that Provigil was helpful in reducing her fatigue. Tr.
575, 578. Thus, plaintiff's argument fails.

The ALJ also cites to Dr. Harris's finding of a normal gait
during his examination as inconsistent with Mrs. Cherry's
observations that plaintiff's balance is unstable. Tr. 19. In
response, plaintiff argues the ALJ did not consider Dr. Harris's
examination finding of a modestly abnormal Romberg test for
balance, which supports Mrs. Cherry's testimony. I disagree.

The ALJ discussed the modestly abnormal Romberg finding when
discussing Dr. Harris's examination. Tr. 16. Moreover, in a January
2011 examination, Dr. Friedman noted a normal gait and Romberg
finding. Tr. 565. In additional examinations in 2011 and 2012, Dr.
Friedman consistently noted a normal gait and station finding. Tr.
569, 572, 575, 578, 582. Lastly, plaintiff has not challenged the
ALJ's assessment of the medical evidence. Accordingly, as discussed
above, the ALJ provided two germane reasons for partially
discrediting Mrs. Cherry's testimony. *See Bayliss v. Barnhart*, 427
F.3d 1211, 1218 (9th Cir. 2005) (ALJ provided germane reasons for
rejecting portions of lay testimony that was inconsistent with
claimant's activities and objective evidence).

III. **Plaintiff Idenitifies Two Errors at Step Four**

At step four, the claimant has the burden to show she can no longer perform her past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). However, the ALJ must still provide factual findings to support his step four conclusion. *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001). "This requires specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work." *Id.* at 845. At steps four and five, the ALJ can rely on VE testimony in determining whether a claimant can perform his past relevant work or other work in the national economy. *See Johnson v. Shalala,* 60 F.3d 1428, 1436 (9th Cir. 1995) (holding that the ALJ properly relied on expert testimony to find claimant could perform two jobs identified by the VE).

First, plaintiff argues that the ALJ's step four finding is not supported by substantial evidence because neither the ALJ nor the VE provided specific Dictionary of Occupational Titles (DOT) codes. Second, plaintiff argues that the ALJ incorrectly found that she could perform her past relevant work as a cashier because the job as plaintiff performed it and as it is generally performed exceeds the ALJ's RFC finding. With regard to her first argument, plaintiff is correct.

20 - OPINION AND ORDER

At the hearing, the ALJ asked the VE to identify plaintiff's past relevant work. The VE testified that plaintiff's past relevant work included the following jobs: cashier, massage therapist, house cleaner, and flagger. Tr. 50. With respect to the cashier job, the VE stated that "what we have is the cashier at a convenience store. It is typically done as light. The DOT classified it as light...There was some stocking involved, so the stocking actually takes some of [the job] into the medium [exertional] level." Tr. 50. The VE classified plaintiff's cashier position as a light exertional level, low semi-skilled job. Tr. 50.

The record indicates that the VE consulted with the DOT in identifying plaintiff's past relevant work. Tr. 50, 51. However, when testifying, the VE did not cite to a DOT code for the cashier position, so the record is unclear as to which cashier job in the DOT the VE was referring.[2] TR. 50. Although the VE acknowledged that as performed by plaintiff, the cashier job required medium level tasks, the VE did not further resolve the light versus medium level discrepancy of plaintiff's prior cashiering work. Because the

---

[2]Plaintiff noted that the only cashier job listed in the DOT at a light exertional level SVP of 3 is cashier-checker, DOT #211.462-014, which requires constant handling and fingering. However, the Commissioner cited cashier II job DOT #211.462-010 at the light level SVP of 3, which involves frequent handling and fingering and lists Parking Lot cashier as an alternate designation. *Dictionary of Occupational Titles* (DOT) §§ 211.462-014, 211.462-010. As the exchange between the ALJ and VE shows, there are several cashier jobs in the DOT. Tr. 51-52. Thus, specific citation to DOT codes when eliciting VE testimony is necessary.

21 - OPINION AND ORDER

VE did not supply DOT code citations when classifying plaintiff's past relevant work, this portion of the ALJ's step four finding is not supported by substantial evidence.

The ALJ then continued this error when determining whether plaintiff could perform her past relevant work. During the hearing, the ALJ posed a hypothetical to the VE incorporating all of the limitations of the RFC finding. The VE testified that claimant's past relevant work as a cashier "would still accommodate [the] restrictions" posed in the hypothetical. Tr. 51. The VE testified:

> ALJ:    And there are different kinds of cashier jobs.
>         I mean, some cashier jobs, you have to be on
>         your feet all day. Some cashier jobs, you can
>         – like a parking lot cashier or a, cafeteria
>         cashier, those kinds of cashiering jobs you
>         can do either standing, sitting, doesn't
>         really matter...would you say?
>
> VE:     Exactly, and that's why I think with...the one-hour
>         ability to switch position definitely would allow
>         for a quite a few of these positions, although
>         technically, they may last up until about six hours
>         out of the eight, but they'll certainly allow more
>         flexibility, especially the cashier, the parking
>         lot attendant, which is light and unskilled, but in
>         a way, really, you spend about 75 percent of the
>         time in a sit-down position. Tr. 51-52.

Again, the VE did not provide nor did the ALJ request DOT codes to match the jobs that he discussed with the ALJ. Despite this lack of supporting information, in the decision, the ALJ found that plaintiff could perform her past relevant work as a cashier as it is generally performed in the national economy. Tr. 19-20. This finding is erroneous.

22 - OPINION AND ORDER

Without referencing specific DOT codes, the ALJ must have relied on the VE's generic occupational classification of "cashier." Such a generic classification is insufficient in determining whether plaintiff can perform her past relevant work because there are many DOT jobs under the classification of "cashier" as the discussion of the VE's testimony reveals. *Carmickle*, 533 F.3d at 1167 (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1051 (9th Cir. 2001)). "When...the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the [vocational expert's] head, we are left with nothing to review." *Pinto*, 249 F.3d at 847 (citing *Winfrey v. Chater*, 92 F.3d 1017, 1025 (10th Cir. 1996)). Moreover, some of those cashier jobs would exceed plaintiff's RFC. By failing to indicate with specificity which cashier job in the DOT is most analogous to plaintiff's cashier job as generally performed, the ALJ erred. Based on the record before me, the ALJ's finding that plaintiff can perform her past relevant work as a cashier as generally performed is not supported by substantial evidence.

I decline to address plaintiff's second argument because it is clear that the ALJ's reliance on VE testimony was erroneous, and the ALJ's step four finding is not supported by substantial evidence.

23 - OPINION AND ORDER

## IV.    Hypothetical Posed to the VE was Valid

Plaintiff contends that the ALJ posed an inadequate hypothetical to the VE because the ALJ's evaluation of plaintiff's RFC failed to adequately account for her subjective allegations of pain. I disagree.

As discussed above, the ALJ provided clear and convincing reasons to discredit plaintiff's credibility, and this determination is supported by substantial evidence. Moreover, plaintiff does not challenge the medical evidence or medical opinions that the ALJ relied on in formulating the RFC finding. Thus, I conclude that the ALJ correctly incorporated all of those limitations into the RFC. Furthermore, the hypothetical posed by the ALJ to the VE that included all of plaintiff's credited limitations was legally sufficient in this respect. However, because the ALJ committed an error at step four, I conclude remand is appropriate.

## V.    Remand

After finding the ALJ erred, this court has the discretion to remand for further proceedings or for immediate payment of benefits. *Vasquez v. Astrue*, 572 F.3d 586, 593 (9th Cir. 2009); *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate where there is no useful purpose to be

served by further proceedings or where the record is fully developed. *Vasquez*, 572 F.3d at 593.

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178. The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.*

Where it is not clear that the ALJ would be required to award benefits were the improperly rejected evidence credited, the court has discretion whether to credit the evidence. *Connett v. Barnhart*, 340 F.3d 873, 876 (9th Cir. 2003). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue*, 623 F.3d 1032, 1035 (9th Cir. 2010). Moreover, "[a] claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss v. Commissioner of the Soc. Sec. Admin.*, 635 F.3d 1135, 1138 (9th Cir. 2011).

On this record, I conclude that outstanding issues must be resolved before a final determination of disability can be made. The ALJ determined that plaintiff could perform her past relevant work as a cashier and relied on VE testimony. As discussed

previously, the VE referred to several cashier jobs in the DOT but did not cite to any DOT codes. The ALJ did not specify which job listed in the DOT is most analogous to plaintiff's past relevant work as generally performed, and thus, I concluded the VE's testimony was not supported by substantial evidence. Therefore, it is still unresolved as to whether plaintiff can perform her past relevant work at step four.

Additionally, because the ALJ found plaintiff not disabled at step four, the ALJ did not reach the step five question of whether plaintiff is capable of performing other work that exists in significant numbers in the national economy. Thus, these are outstanding issues that must be resolved before a disability determination can be made. Accordingly, proper remedy is to remand for further administrative proceedings. Thus, I decline to award immediate award of benefits because the record as a whole creates serious doubt as to whether plaintiff is, in fact, disabled. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014).

Based on the foregoing, I exercise discretion under *Connett* and conclude a remand for further proceedings is required to permit the ALJ: (1) to further evaluate plaintiff's past relevant work; (2) determine whether she is able to perform her past relevant work either as she performed it or as it is generally performed; and (3) if necessary, evaluate whether plaintiff is capable of performing

other work that exists in significant numbers in the national economy, with assistance of a vocational expert if necessary.

## CONCLUSION

For the reasons stated above, the Commissioner's final decision denying benefits to plaintiff is REVERSED and this proceeding is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this opinion.

IT IS SO ORDERED.

DATED this _10_ day of DECEMBER, 2014.

*Malcolm F. Marsh*

Malcolm F. Marsh
United States District Judge